## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT POTTER, EDNA GRENCH, and**
**DOROTHY LUETTINGER, individually and**
**on behalf of all others similarly situated,**

      **Plaintiffs,**

**v.**

**JANUS INVESTMENT FUND, a business trust,**
**JANUS CAPITAL MANAGEMENT, LLC, SCUDDER**
**INTERNATIONAL FUND, INC., a Corporation, and**
**DEUTSCHE INVESTMENT MANAGEMENT**
**AMERICAS, INC.,**

      **Defendants.**                 **Case No. 06-cv-929-DRH**
                        **Consolidated with:  Case No. 06-cv-997-DRH**

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

      This matter is before the Court on the motion for remand to state court based on lack of subject matter jurisdiction (Doc. 19) and the motions for remand to state court based on procedural defects in removal (Docs. 9, 13) brought by Plaintiffs Robert Potter, Edna Grench, and Dorothy Luettinger.  For the following reasons, the motion for remand to state court based on lack of subject matter jurisdiction is **DENIED**.  The motions for remand to state court based on procedural defects in removal are **GRANTED**.

## Introduction

      These consolidated cases, which are successors to a case previously on the Court's docket, *Potter v. Janus Investment Fund*, No. 03-cv-00692-DRH (S.D. Ill. filed Oct. 23, 2003), are among a number of putative class actions pending before the Court concerning so-called

"market-timing," an arbitrage practice that exploits differences between the value of foreign securities held by a mutual fund and the fund's "net asset value" as calculated once a day at the close of the New York Stock Exchange for purposes of redemption of fund shares. *See generally DH2, Inc. v. U.S. S.E.C.*, 422 F.3d 591, 592-94 (7th Cir. 2005). Defendant Janus Investment Fund is the sponsor of the Janus Overseas Fund, a mutual fund managed by Defendant Janus Capital Management, LLC. Defendant Scudder International Fund, Inc., is the sponsor of the Scudder International Fund, a mutual fund managed by Defendant Deutsche Investment Management Americas, Inc. Potter, who holds shares in the Janus Overseas Fund, Grench, and Luettinger, who holds shares in the Scudder International Fund, allege that Defendants breached state-law duties by allowing arbitrageurs to engage in market-timed trades of shares in the funds, resulting allegedly in devaluation of the shares.[1] Plaintiffs seek certification of a class of "all persons in the United States who have owned shares in [the] Janus Overseas [Fund] or Scudder International [Fund] for more than fourteen days from the date of purchase to the date of sale . . . or exchange" of the shares during the five years before the filing of the complaint. Doc. 2, Ex. 2 ¶ 42.

Potter and Luettinger filed their claims originally in 2003 in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, whereupon those claims were removed to this Court pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), Pub. L. 105-353, 112 Stat. 3227 (codified at 15 U.S.C. § 77p(b)-(f) and 15 U.S.C. § 78bb(f)), which, as will be discussed in more detail presently, prohibits the maintenance of certain claims regarding

---

1.    Oddly, the operative complaint contains no substantive allegations with respect to Grench's claims, nor is it entirely clear from the complaint why claims against Janus Investment Fund and Janus Capital Management, LLC, have been joined with claims against Scudder International Fund, Inc., and Deutsche Investment Management Americas, Inc.

securities as a class action under state law.  The Court subsequently remanded the claims of Potter and Luettinger to state court for lack of subject matter jurisdiction, *see Potter v. Janus Inv. Fund*, No. 03-CV-0692-DRH, 2004 WL 1173201 (S.D. Ill. Feb. 12, 2004), whereupon an amended complaint joining Grench was filed in state court on March 22, 2004.  In June 2004 the United States Court of Appeals for the Seventh Circuit held that it had jurisdiction to review the Court's order remanding the claims of Potter and Luettinger to state court.  *See Kircher v. Putnam Funds Trust*, 373 F.3d 847, 851 (7th Cir. 2004) ("*Kircher I*").  In April 2005 the Seventh Circuit Court of Appeals reversed the remand order and directed the Court to dismiss the claims of Potter and Luettinger pursuant to SLUSA.  *See Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005) ("*Kircher II*").

Following the issuance of *Kircher II*, Potter, Grench, and Luettinger attempted to file an amended complaint in this Court.  The Court struck the amended complaint and dismissed the case.  Potter, Grench, and Luettinger then appealed from the dismissal.  In January 2006 the Supreme Court of the United States agreed to hear an appeal from *Kircher I*, *see Kircher v. Putnam Funds Trust*, 126 S. Ct. 979 (2006), and in June 2006 the Court held that appellate review of the 2004 order remanding the claims of Potter and Luettinger is precluded by 28 U.S.C. § 1447(d), thus vacating both *Kircher I* and *Kircher II*.  *See Kircher v. Putnam Funds Trust*, 126 S. Ct. 2145, 2157 (2006) ("*Kircher III*").  On October 16, 2006, pursuant to *Kircher III*, the Seventh Circuit Court of Appeals directed this Court to remand the *Potter* case to state court.  *See In re Mutual Fund Market-Timing Litig.*, 468 F.3d 439, 444 (7th Cir. 2006) ("*Kircher IV*").  On November 13, 2006, Defendants filed a notice of removal as to the claims of Potter, Grench, and Luettinger, asserting federal subject matter jurisdiction under SLUSA; the matter was docketed as the above-captioned

cause.  On November 29, 2006, the Court executed the *Kircher IV* court's mandate.  On December 5, 2006, Defendants filed still another notice of removal as to the claims of Potter, Grench, and Luettinger, asserting SLUSA jurisdiction; the matter was docketed as *Potter v. Janus Investment Fund*, No. 06-cv-00997-DRH (S.D. Ill. filed Dec. 5, 2006).  On December 20, 2006, the Court consolidated No. 06-cv-00997-DRH with the above-captioned cause.  Plaintiffs now have moved for remand of their claims to state court based on lack of subject matter jurisdiction and procedural defects in removal.  The motions have been fully briefed and are ripe for decision. Having reviewed carefully the submissions of the parties concerning remand, the Court now is prepared to rule.

## Discussion

### A.    Legal Standard

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  *See also Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 771 (S.D. Ill. 2006). The party seeking removal has the burden of establishing federal jurisdiction.  *See Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 835 (S.D. Ill. 2006) (citing *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006)); *Brooks v. Merck & Co.*, 443 F. Supp. 2d 994, 998 (S.D. Ill. 2006); *McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736, 738 (S.D. Ill. 2006).  "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.'  Put another way, there is a strong presumption in favor of remand."  *Kuntz v. Illinois Cent.*

*R.R. Co.*, 469 F. Supp. 2d 586, 589 (S.D. Ill. 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).  *See also Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 841 (S.D. Ill. 2006) ("Doubts concerning removal must be resolved in favor of remand to the state court."); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 837 (S.D. Ill. 2006) ("[D]oubts about federal jurisdiction on removal are to be resolved in favor of remand.").

### B.    Subject Matter Jurisdiction

As discussed, Plaintiffs have moved for remand on the grounds both that the requirements for the exercise of federal subject matter jurisdiction under SLUSA and the procedural requirements for removal under 28 U.S.C. § 1446(b) are not met in this case.  Because "issues affecting a federal court's subject matter jurisdiction are 'fundamentally preliminary,'" the Court will address first the question of subject matter jurisdiction before turning to Plaintiffs' arguments concerning procedural defects in removal.  *In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, Civil No. MDL-03-1562-GPM, 2007 WL 522300, at *2 (S.D. Ill. Feb. 16, 2007) (quoting *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).  *See also Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 845 (S.D. Ill. 2006) (quoting *Meyers v. Bayer AG*, 143 F. Supp. 2d 1044, 1048 (E.D. Wis. 2001)) (noting the "constitutional importance" of the rule that a district court should resolve issues pertaining to federal subject matter jurisdiction "first," before addressing any other aspect of a case).

SLUSA was enacted, of course, against the backdrop of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 743 (1995) (codified at 15 U.S.C. §§ 77z-1, 77z-2, 78u-4, 78u-5, 77t, 78o, 78t & 78u), which created procedural devices to enable district courts quickly to identify and dismiss meritless class actions alleging fraud in the

purchase and sale of securities.  *See* 15 U.S.C. § 77z-1(b); *Id.* § 78u-4(b).  *See also Lander v. Hartford Life & Annuity Ins. Co.*, 251 F.3d 101, 107 (2d Cir. 2001); *Zoren v. Genesis Energy, L.P.*, 195 F. Supp. 2d 598, 602 (D. Del. 2002); *In re Waste Mgmt., Inc. Sec. Litig.*, 194 F. Supp. 2d 590, 592 (S.D. Tex. 2002); *Bertram v. Terayon Communications Sys., Inc.*, No. CV 00-12653 SVW RZX, 2001 WL 514358, at *1 (C.D. Cal. Mar. 27, 2001).  An unintended consequence of PSLRA's restrictions on securities litigation in federal court was to prompt "many would-be plaintiffs to file their claims in state court, based on state law, in order to circumvent the strong requirements established by the statute."  *In re Lutheran Bhd. Variable Ins. Prods. Co. Sales Practices Litig.*, 105 F. Supp. 2d 1037, 1039 (D. Minn. 2000).  Congress responded to the problem by enacting SLUSA to "prevent plaintiffs from seeking to evade the protections that federal law provides against abus[ive] litigation by filing suit in State, rather than federal, courts."  *Id.*  *See also Alessi v. Beracha*, 244 F. Supp. 2d 354, 357 (D. Del. 2003); *Wald v. C.M. Life Ins. Co.*, No. Civ. 3:00-CV-2520-H, 2001 WL 256179, at *4 (N.D. Tex. Mar. 8, 2001); *Derdiger v. Tallman*, 75 F. Supp. 2d 322, 324 (D. Del. 1999).

SLUSA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to preclude the maintenance of certain state-law claims regarding securities as class actions, and to provide for the removal to federal court of class actions asserting those claims.  Specifically, SLUSA amended the 1933 Act to provide, in pertinent part:

> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging –
> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or
> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

\* \* \* \*

Any covered class action brought in any State court involving a covered
security . . . shall be removable to the Federal district court for the district in which
the action is pending[.]

15 U.S.C. § 77p(b), (c).  The same provisions were added to the 1934 Act.  *See* 15 U.S.C.

§ 78bb(f)(1)-(2).[2]  Thus, an action will be dismissed under SLUSA if it is (1) a "covered class

action," (2) that is based on a state law, (3) alleging a misrepresentation or omission of a

material fact or use of any manipulative or deceptive device or contrivance (4) "in connection with"

the purchase or sale of a covered security, and all of these elements must be present for preclusion

to apply.  *See Beckett v. Mellon Investor Servs., LLC*, No. C06-5245 FDB, 2006 WL 3249189, at

\*2 (W.D. Wash. Nov. 8, 2006); *Golub v. Hilb, Rogal & Hobbs Co.*, 379 F. Supp. 2d 639, 642 (D.

Del. 2005); *Potter*, 2004 WL 1173201, at \*2; *Denton v. H&R Block Fin. Advisors, Inc.*, No. 01 C

4185, 2001 WL 1183292, at \*3 (N.D. Ill. Oct. 4, 2001).  *See also Nekritz v. Canary Capital*

*Partners, LLC*, No. Civ. 03-5081(DRD), 2004 WL 1462035, at \*3 (D.N.J. Jan. 12, 2004).  Here it

is not disputed that Plaintiffs' claims are brought under state law, that the consolidated cases

seek damages on behalf of more than fifty people or prospective class members and thus are

"covered class actions" for SLUSA purposes, *see* 15 U.S.C. § 77p(f)(2), and that the claims before

the Court involve "covered securities" within the meaning of SLUSA, specifically, registered mutual

fund shares.  *See* 15 U.S.C. § 77p(f)(3); 15 U.S.C. § 77r(b)(2).

In the Court's 2004 order remanding the claims of Potter and Luettinger for lack of

subject matter jurisdiction, the Court sided with what was at that the time the weight of authority in

---

2.    For the sake of simplicity, henceforth the Court, in citing SLUSA, will cite to the statutory
amendments of the 1933 Act, which, as noted, are identical to the amendments made by SLUSA to
the 1934 Act.

holding that class-action claims on behalf of persons who have held, rather than purchased or sold, securities are not claims "in connection with" the purchase or sale of covered securities within the meaning of SLUSA. *See Potter*, 2004 WL 1173201, at **2-3. *See also Falkowski v. Imation Corp.*, 309 F.3d 1123, 1131 (9th Cir. 2002); *Riley v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 292 F.3d 1334, 1342-43 (11th Cir. 2002); *Green v. Ameritrade, Inc.*, 279 F.3d 590, 597-99 (8th Cir. 2002); *Atencio v. Smith Barney, Citigroup, Inc.*, No. 04 Civ. 5653(MBM), 2005 WL 267556, at *4 (S.D.N.Y. Feb. 2, 2005); *Grabow v. Pricewaterhousecoopers LLP*, 313 F. Supp. 2d 1152, 1156 (N.D. Okla. 2004); *Feitelberg v. Credit Suisse First Boston LLC*, No. C 03-3451 SC, 2003 WL 22434098, at **4-5 (N.D. Cal. Oct. 24, 2003); *Chinn v. Belfer*, No. Civ.02-00131-ST, 2002 WL 31474189, at *5 (D. Or. June 19, 2002); *Gutierrez v. Deloitte & Touche, L.L.P.*, 147 F. Supp. 2d 584, 595 (W.D. Tex. 2001); *Gordon v. Buntrock*, No. 00 CV 303, 2000 WL 556763, at **2-3 (N.D. Ill. Apr. 28, 2000); *Hines v. ESC Strategic Funds, Inc.*, No. 3:99-0530, 1999 WL 1705503, at *6 (M.D. Tenn. Sept. 17, 1999); *Lalondriz v. USA Networks, Inc.*, 54 F. Supp. 2d 352, 353-54 (S.D.N.Y. 1999). However, controlling authority handed down after the Court's 2004 remand order now has clarified that state-law class actions on behalf of holders of covered securities must be deemed to be "in connection with" purchases or sales for purposes of SLUSA preclusion. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 126 S. Ct. 1503, 1515 (2006). *See also Kircher II*, 403 F.3d at 484; *Spurgeon v. Pacific Life Ins. Co.*, Nos. 06-cv-0983-MJR, 06-cv-0925-MJR, 2007 WL 685943, at *6 (S.D. Ill. Mar. 6, 2007); *In re Edward Jones Holders Litig.*, 453 F. Supp. 2d 1210, 1215-17 (C.D. Cal. 2006); *In re Hollinger Int'l, Inc. Sec. Litig.*, No. 04C 0834, 2006 WL 1806382, at *17 (N.D. Ill. June 28, 2006); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 691-92, 695 (S.D.N.Y. 2006).

What is chiefly in dispute in this instance is whether Plaintiffs' claims assert a misrepresentation or omission of a material fact or use of a manipulative or deceptive device or contrivance within the meaning of SLUSA in connection with purchases or sales of covered securities.  Plaintiffs argue that, because the allegations of their complaint are framed as claims for negligence and breach of fiduciary duty, rather than fraud, they are not within the scope of SLUSA.  Of course, just as federal pleading rules do not require a plaintiff to specify any particular legal theory in a complaint, *see George v. Kraft Foods Global, Inc.*, No. 06-cv-798-DRH, 2007 WL 853998, at *3 (S.D. Ill. Mar. 16, 2007), so too it is axiomatic that "[l]abels . . . of claims for relief . . . do not matter" in federal court. *LaRoe v. Cassens & Sons, Inc.*, No. CIV. 06-713-GPM, 2006 WL 4018917, at *4 (S.D. Ill. Nov. 30, 2006) (quoting *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000)).  In the particular context of SLUSA, this means that a court must look to the substance rather than the form of a claim to determine whether it is within the scope of the statute.  *See Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) ("The issue of preemption [under SLUSA] . . . hinges on the content of the allegations – not on the label affixed to the cause of action."); *Prager v. Knight/Trimark Group, Inc.*, 124 F. Supp. 2d 229, 235 (D.N.J. 2000) ("Plaintiff's characterization of his claims [is] not at issue.  The issue, rather, is the substance of the claims contained in the complaint, not the particular semblance in which it is cloaked.").  *See also Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005) (a state-law claim for breach of contract was precluded by SLUSA); *Professional Mgmt. Ass'n, Inc. Employees' Profit Sharing Plan v. KPMG LLP*, 335 F.3d 800, 803 (8th Cir. 2003) (the plaintiff's state-law negligence claims were precluded by SLUSA); *Siepel v. Bank of Am., N.A.*, 239 F.R.D. 558, 568 (E.D. Mo. 2006) (dismissing under SLUSA claims for breach of the fiduciary duty of

loyalty and unjust enrichment); *In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 603-04 (S.D.N.Y. 2006) (dismissing under SLUSA state-law claims for breach of fiduciary duty); *Dacey v. Morgan Stanley Dean Witter & Co.*, 263 F. Supp. 2d 706, 710-12 (S.D.N.Y. 2003) (dismissing under SLUSA claims for breach of contract); *Korsinsky v. Salomon Smith Barney Inc.*, No. 01 Civ. 6085(SWK), 2002 WL 27775, at *4 (S.D.N.Y. Jan. 10, 2002) (holding that SLUSA precluded state-law claims where, although "the complaint clearly states that '[t]his is not an action for fraud,'" the complaint in fact contained "several instances of alleged misrepresentations" and omissions by the defendants); *Gibson v. PS Group Holdings, Inc.*, No. 00-CV-0372 W(RBB), 2000 WL 777818, at *3 (S.D. Cal. June 14, 2000) (dismissing claims for restitution and equitable relief as precluded under SLUSA).

The gist of Plaintiffs' argument against SLUSA preclusion of their claims is simply that, because they do not allege any intent to deceive on the part of Defendants, their claims are outside the scope of the statute.  However, this argument assumes, incorrectly, that scienter or intent to deceive is a necessary predicate to any preclusion under the statute.  Under the 1934 Act, of course, it is unlawful "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission [("SEC")] may prescribe[.]"  15 U.S.C. § 78j(b).  The United States Supreme Court has held that a requirement of scienter necessarily inheres in this statutory provision because "[t]he words 'manipulative or deceptive' used in conjunction with 'device or contrivance' strongly suggest that [Section] 10(b) [of the 1934 Act] was intended to proscribe knowing or intentional misconduct."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 197 (1976).  *See also Rankow v. First Chicago Corp.*, 870 F.2d 356, 366-67 (7th Cir.

1989); *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 946 (7th Cir. 1989); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2002 WL 31269485, at *6 (N.D. Ill. Oct. 9, 2002).  It does not follow, however, that Section 10(b) was intended to define the entire scope of preclusion under SLUSA.  As discussed, SLUSA precludes state-law class actions alleging "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b)(2).  While this portion of SLUSA's statutory language tracks that of Section 10(b), other provisions of SLUSA governing preclusion do not, providing instead that the statute extends to covered class actions alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b)(1).  In general, "when [Congress] uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."  *Sosa v. Alvarez-Machain*, 542 U.S. 692, 711 n.9 (2004).  *See also Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 547 (7th Cir. 2003); *Taracorp, Inc. v. NL Indus., Inc.*, 73 F.3d 738, 744 (7th Cir. 1996).  The fact that 15 U.S.C. § 77p(b)(1) does not contain the language in Section 10(b) from which a scienter requirement has been judicially inferred suggests that Congress did not intend for scienter to be a requirement for preclusion under that provision of SLUSA.

Also significant is the fact that SLUSA expressly exempts from its scope state-law class actions that are brought as derivative actions.  *See* 15 U.S.C. § 77p(f)(2)(B).  The statutory exception indicates that SLUSA was designed to extend broadly to actions in which alleged mismanagement of a corporation by its officers has caused direct injury to the corporation that is only indirectly an injury to shareholders of the corporation.  *See* 12B William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5924 (perm. ed., rev. vol. 1999) (stating

that "[a] shareholder ordinarily cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like," because such claims "belong[ ] to the corporation.") (collecting cases). *See also In re Goldman Sachs Mut. Funds*, No. 04 Civ. 2567(NRB), 2006 WL 126772, at **5-7 (S.D.N.Y. Jan. 17, 2006) (mutual fund shareholders do not have standing to maintain direct claims on the basis of injuries to a fund that are only indirectly injuries to shareholders); *Hogan v. Baker*, No. Civ.A. 305CV0073P, 2005 WL 1949476, at *4 & n.4 (N.D. Tex. Aug. 12, 2005) (an "overwhelming majority" of courts "reject[ ] [the] contention that a . . . mutual fund differs from the ordinary business corporation" for purposes of determining whether a shareholder has standing to sue for a direct injury, as opposed to bringing suit derivatively on behalf of the corporation) (collecting cases). The statutory exception under SLUSA for derivative actions suggests that, regardless of whether the basis for class-action claims under state law in connection with purchases or sales of covered securities is intentional or negligent conduct, the claims, if derivative, are within the scope of SLUSA unless brought through a derivative action. *See* 2A Norman J. Singer, ed., *Sutherland on Statutory Construction* § 47:11 (6th ed. 2002) (noting that "exceptions make it clear that statutes in which they appear should apply to all persons or situations not excepted.") (collecting cases).

The Court has no difficulty concluding that the claims in this case are within the scope of SLUSA. Under SLUSA, "[t]he element of a misrepresentation or omission of a material fact is satisfied when . . . a plaintiff alleges a misrepresentation . . . concerning the value of the securities . . . sold or the consideration received in return." *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 382 (E.D.N.Y. 2002) (holding that a plaintiff's state-law claims for breach of contract and unjust enrichment were precluded by SLUSA because the complained-of conduct

consisted of an alleged misrepresentation of a material fact).  As the Seventh Circuit Court of

Appeals recognized in *Kircher II*, the gravamen of the claims in this case is that Defendants made

omissions of material fact in connection with the sale or purchase of covered securities, e.g., the fact

that mutual fund shares are valued only once a day and that this once-a-day valuation creates

opportunities for market-timing arbitrage:

> Could the SEC maintain an action under § 10(b) [of the 1934 Act] and [17 C.F.R.
> § 240.]10b-5 against mutual funds that fraudulently or manipulatively increased
> investors' exposure to arbitrage?  Suppose the funds stated in their prospectuses that
> they took actions to prevent arbitrageurs from exploiting the fact that each fund's net
> asset value is calculated only once a day.  That statement, if false (and known to be
> so), could support enforcement action, for the deceit would have occurred in
> connection with investors' purchases of the funds' securities.  Similarly, if these
> funds had stated bluntly in their prospectuses (or otherwise disclosed to investors)
> that daily valuation left no-load funds exposed to short-swing trading strategies, that
> revelation would have squelched litigation of this kind.

> These observations show that plaintiffs' claims depend on statements made or
> omitted in connection with their . . . purchases of the funds' securities . . . .  Our
> plaintiffs' effort to define non-purchaser-non-seller classes is designed to evade
> PSLRA in order to litigate a securities class action in state court in the hope that a
> local judge or jury may produce an idiosyncratic award.  It is the very sort of
> maneuver that SLUSA is designed to prevent.

403 F.3d at 484 (emphasis omitted).

As discussed, the applicability of SLUSA preclusion in this instance does not hinge

on whether the omissions at issue were made with intent to deceive or not, provided the alleged

omissions were made in connection with purchases or sales of covered securities.  Because the

substance rather than the form of Plaintiffs' claims concerns material omissions in connection

with purchases or sales of covered securities, those claims are within the scope of preclusion

under SLUSA.  *See Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 01 Civ. 2946(DLC), 01

Civ. 7670(DLC), 2004 WL 444554, at *3 (S.D.N.Y. Mar. 10, 2004) (where the grounds for a claim

of unjust enrichment under state law were alleged misrepresentations or omissions in connection with purchases or sales of covered securities, the claim was precluded by SLUSA, although the plaintiff alleged no intent to deceive); *Winne v. Equitable Life Assurance Soc'y of U.S.*, 315 F. Supp. 2d 404, 413-15 (S.D.N.Y. 2003) (SLUSA does not require that a state-law claim allege scienter as a condition to preclusion of covered class actions alleging untrue statements or omissions of material fact in connection with purchases or sales of covered securities; thus, SLUSA preempted a New York deceptive business practices claim that alleged untrue statements or omissions of material facts but no intent to defraud); *In re Worldcom, Inc.*, 263 F. Supp. 2d 745, 769-70 (S.D.N.Y. 2003) ("Nothing in the language of Section 77p suggests that it bars only state law claims that plead a certain level of scienter . . . . The decision to assert only a negligence as opposed to a fraud claim . . . is ineffective if asserted in an effort to insulate the claim from SLUSA.").[3]

Moreover, the injury alleged by Plaintiffs, specifically, dilution of share value due to market-timing arbitrage, obviously is derivative in nature.  As the *Kircher II* court recognized, these claims, being derivative, are within the scope of SLUSA unless brought derivatively on behalf of the funds after a demand by shareholders on corporate officers.  *See* 403 F.3d at 482-83.  *See also Frank v. Hadesman & Frank, Inc.*, 83 F.3d 158, 160 (7th Cir. 1996) (citing *Seinfeld v. Bays*, 595 N.E.2d 69 (Ill. App. Ct. 1992)) (under Illinois law, an action for corporate waste and devaluation of stock is derivative); *Coronet Ins. Co. v. Seyfarth*, 665 F. Supp. 661, 670 (N.D. Ill. 1987) ("A

---

3.    Although the Court concludes that scienter is a not a requirement for preclusion under 15 U.S.C. § 77p(b)(1), in truth some of the allegations of Plaintiffs' complaint concerning Defendants' gross negligence with respect to protecting fund investors from market-timing practices strongly suggest recklessness of the kind rising to the level of scienter.  *See SEC v. Jakubowski*, 150 F.3d 675, 681 (7th Cir. 1998); *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 792-93 (7th Cir. 1977); *Sundstrand Corp. v. Sun Chem. Corp*., 553 F.2d 1033, 1045 (7th Cir. 1977); *In re System Software Assocs., Inc.*, No. 97 C 177, 2000 WL 283099, at *14 (N.D. Ill. Mar. 8, 2000).

decrease in the value of shares merely reflects a decrease in the value of the firm, an insufficient direct harm to give a shareholder standing to sue in his own right."); 13 Ill. L. & Prac. *Corporations* § 159 (2000) ("A shareholder of a corporation does not acquire standing to maintain an action in his or her own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his or her corporate shares resulting from the impairment of corporate assets.") (collecting cases). *Accord Lapidus v. Hecht*, 232 F.3d 679, 683 (9th Cir. 2000) (allegations of dilution of the value of mutual fund shares through mismanagement of the fund by corporate officers are claims for injury to the fund that must be brought derivatively by shareholders); *Everett v. Bozic*, No. 05 Civ. 00296(DAB), 2006 WL 2291083, at **2-5 (S.D.N.Y. Aug. 3, 2006) (same); *Stegall v. Ladner*, 394 F. Supp. 2d 358, 364-65 (D. Mass. 2005) (same); *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 260-61 (S.D.N.Y. 2003) (same); *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98-4318, 2000 WL 10211, at *1, *4 (S.D.N.Y. Jan. 6, 2000) (same); *Gentile v. Rossette*, 906 A.2d 91, 99 (Del. 2006) (dilution claims "are not normally regarded as direct, because any dilution in value of the corporation's stock is merely the unavoidable result (from an accounting standpoint) of the reduction in the value of the entire corporate entity, of which each share of equity represents an equal fraction.  In the eyes of the law, such equal 'injury' to the shares . . . is not viewed as, or equated with, harm to specific shareholders individually.").[4]

---

4.   The Court recognizes the general rule that whether a claim is direct or derivative is tested using the law under which a business entity is organized.  *See, e.g., Fogel v. Zell*, 221 F.3d 955, 966 (7th Cir. 2000) (stating that "under standard choice of law rules . . . the law of the state of incorporation determines who can bring a derivative suit.").  However, because the parties have not pointed to any conflict between the law of Illinois and that of another state regarding derivative claims, the Court is entitled to assume that Illinois law furnishes the relevant state law in this instance.  *See Employers Mut. Cas. Co. v. Skoutaris*, 453 F.3d 915, 923 (7th Cir. 2006); *Barron v.*

Finally, under the recent decision of the United States Supreme Court in *Dabit*, it is clear that the claims asserted in the matter at bar are within the scope of SLUSA.  In *Dabit* the Court emphasized that "[t]he magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated," and that "federal law, not state law, has long been the principal vehicle for asserting class-action securities fraud claims."  126 S. Ct. at 1509, 1514.  The Court further emphasized that "[a] narrow reading of [SLUSA] would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's . . . purpose, viz., . . . to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives . . . of the PSLRA."  *Id.* at 1513.  Accordingly, the Court held that, to establish that a misrepresentation or omission was made "in connection with the purchase or sale of a covered security" for SLUSA purposes, it is enough that the conduct alleged by a plaintiff to violate state law "'coincide' with a securities transaction – whether by the plaintiff or someone else."  *Id.* (quoting *United States v. O'Hagan*, 521

---

*Ford Motor Co. of Canada*, 965 F.2d 195, 197 (7th Cir. 1992); *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991); *International Adm'rs, Inc. v. Life Ins. Co. of N. Am.*, 753 F.2d 1373, 1376 & n.4 (7th Cir. 1985).  *See also In re General Motors Corp. Dex-Cool Prods. Liab. Litig.*, 2007 WL 522300, at *10 (noting the presumption that, in all cases in federal court, state law furnishes the rule of decision, regardless of the jurisdictional basis of a specific case).  The Court notes that, although in its 2004 order remanding the *Potter* case, the Court held that the injuries alleged by Potter and Luettinger were direct, not derivative, *see* 2004 WL 1173201, at *3, the Court did not have the guidance of *Kircher II* and *Dabit* at that time.  Also, closer examination of the authorities relied upon by the Court in the 2004 order, especially *Strougo v. Bassini*, 282 F.3d 162 (2d Cir. 2002), discloses that they are inapposite to the claims asserted in the instant matter.  In *Strougo*, for example, the injury alleged was essentially in the nature of oppression of minority shareholders by majority shareholders, which is a direct claim, not a derivative one.  *See id.* at 173-76.  *See also Lefkovitz v. Wagner*, 395 F.3d 773, 777 (7th Cir. 2005); *Hayes v. Crown Cent. Petroleum Corp.*, 249 F. Supp. 2d 725, 736 (E.D. Va. 2002), *vacated in part on other grounds*, 78 Fed. Appx. 857 (4th Cir. 2003); *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486, 490 (N.D. Ill. 1999).  In this case, by contrast, the injury alleged is to the funds, and therefore, as discussed, Plaintiffs' action must be brought derivatively.

U.S. 642, 656 (1997)).  "The requisite showing, in other words, is 'deception . . . in connection with the purchase or sale of any security, . . . not deception of an identifiable purchaser or seller.'"  *Id*. (quoting *O'Hagan*, 521 U.S. at 658).  Thus, the Court held, even though the plaintiffs lacked the requisite standing to bring claims under federal securities laws due to their status as holders, rather than purchasers or sellers, of securities, their class-action claims under state law nonetheless were subject to dismissal pursuant to SLUSA.  *See id*. at 1512-15.

The *Dabit* Court's broad interpretation of SLUSA preclusion is supported by the language of the statute, which does not limit preclusion under SLUSA to situations where misrepresentations or omissions are made by a defendant sought to be held liable under state law.  Rather, preclusion under the statute also applies when class-action claims under state law in connection with purchases or sales of covered securities coincide with alleged misrepresentations or omissions of fact by third parties.  As discussed, the statute prohibits the maintenance under state law of class actions alleging "that *the defendant* used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b)(2) (emphasis added).  Importantly, however, the other subsection of 15 U.S.C. § 77p(b) contains no such limitation, instead extending preclusion under the statute to a state-law claim alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 77p(b)(1).  Thus, as both *Dabit* and the language of SLUSA demonstrate, class-action claims under state law are within the scope of the statute where they coincide with misrepresentations or omissions in connection with purchases or sales of covered securities, whether made by a defendant or a third person, and regardless of whether federal securities laws furnish a remedy to a plaintiff.

In this instance it is clear that Plaintiffs' state-law claims coincide with alleged securities fraud.  Market timing in itself is not unlawful, but "it nevertheless is prohibited by Rule 10b-5 [of the SEC] if it is engaged in by favored market insiders at the expense of long-term mutual fund investors from whom it is concealed and who have a right to rely upon its prevention by fund advisers' and managers' good faith performance of their fiduciary obligations."  *In re Mutual Funds Inv. Litig*., 384 F. Supp. 2d 845, 856 (D. Md. 2005).  *See also S.E.C. v. Gann*, No. Civ.A. 305CV0063L, 2006 WL 616005, at **6-7 (N.D. Tex. Mar. 13, 2006).  The gravamen of Plaintiffs' claims, of course, is precisely that negligence and breaches of fiduciary duty by Defendants have permitted arbitrageurs to engage in a pattern of market-timing trades in shares of the Janus Overseas Fund and Scudder International Fund, to the detriment of shareholders in the funds.  The fact that Plaintiffs have chosen to disguise what amount to claims of securities fraud as claims for negligence and breach of fiduciary duty under state law is not enough to evade preclusion of those claims under SLUSA.  Just as SLUSA preclusion does not hinge on whether Plaintiffs have a remedy under the federal securities laws, so imperfect pleading of claims of fraud in connection with purchases and sales of covered securities does not take those claims out of the scope of the statute.  As the *Kircher II* court recognized, SLUSA's "preemptive effect is not confined to knocking out state-law claims by investors who have *winning* federal claims, as plaintiffs suppose.  It covers both good and bad securities claims – *especially* bad ones." 403 F.3d at 484 (emphasis in original). *See also LaSala v. Bordier et CIE*, 452 F. Supp. 2d 575, 584-88 (D.N.J. 2006) (holding that SLUSA's preclusive effect extends to state-law claims of aiding and abetting securities fraud, for which federal law does not furnish a private remedy); *Feitelberg v. Merrill Lynch & Co.*, 234 F. Supp. 2d 1043, 1051 (N.D. Cal. 2002) ("[I]f by merely omitting scienter allegations plaintiff can

avoid SLUSA's preemption effect, SLUSA would be totally eviscerated."). Where the negligence and breaches of fiduciary duty alleged in Plaintiffs' complaint clearly coincide with alleged securities fraud in the form of a pattern of market timing, Plaintiffs' claims are within the scope of SLUSA preclusion. Accordingly, the Court finds that federal subject matter jurisdiction is proper in this case pursuant to SLUSA. Plaintiffs' request for remand of this case for lack of subject matter jurisdiction must be denied.

> **C.    Procedural Defects in Removal**

Although the Court has concluded that it has subject matter jurisdiction in this instance, this is not the end, of course, of the Court's inquiry as to whether it may exercise jurisdiction over these consolidated cases on removal. Instead, Defendants must also establish compliance with the procedural requirements for removal. In general, a defendant seeking to remove a case from state court to federal court must file a notice of removal within thirty days after service of an initial pleading in the case. *See* 28 U.S.C. § 1446(b). If, however, a case is not removable at the outset, a notice of removal may be filed within thirty days after the defendant receives "a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*. The procedural requirements governing removal are not jurisdictional, but they are "mandatory and strictly applied." *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323-GPM, 2006 WL 1875457, at *2 (S.D. Ill. June 30, 2006). Specifically, "[t]he plaintiff has a right to remand if the defendant did not take the right steps when removing . . . and . . . a removed matter must be remanded if there are any defects in the removal procedure." *Yount v. Shashek*, No. CIV. 06-753-GPM, 2006 WL 4017975, at *6 (S.D. Ill. Dec. 7, 2006). Moreover, "[a] defendant seeking removal must strictly comply with all the statutory

requirements, and where there is doubt as to whether the requirements have been satisfied, the case should be remanded." *Id*. Thus, where a plaintiff raises an objection to a procedural defect in removal within thirty days of the date of removal, a case must be remanded to state court. *See* 28 U.S.C. § 1447(c); *Sanders v. Merck & Co.*, Civil No. 07-64-GPM, 2007 WL 924497, at *7 (S.D. Ill. Mar. 27, 2007).

The chief issue for the Court to decide is whether Defendants have pointed to an "order or other paper" authorizing successive removals of the claims before the Court. In this instance Defendants offer the Court a menu of purported orders and other papers supposedly permitting successive removals, including: the United States Supreme Court's decision in *Dabit*; the Seventh Circuit Court of Appeals' decision in *Kircher IV*; the Court's order executing the mandate in *Kircher IV* and remanding the *Potter* case to state court; and an order of the Madison County circuit court administratively re-opening the file in the *Potter* case on November 9, 2006. The analysis that follows concerning whether the procedural requirements for removal are satisfied in this matter is informed by a recent decision by another judge of the Court, *Dudley v. Putnam Investment Funds*, Civil No. 06-940-GPM, 2007 WL 329129 (S.D. Ill. Feb. 1, 2007), in which Chief United States District Judge G. Patrick Murphy addressed the same issues concerning removal in a putative market-timing class action with a procedural history substantially identical to that of the instant matter. *See id*. at *1.

As an initial matter, the Court concurs with *Dudley* that neither 28 U.S.C. § 1447(d) nor the doctrine of "the law of the case" precludes successive removals under the circumstances presented here. Although Section 1447(d) precludes review of an order remanding a case to state court by reason of jurisdictional or procedural defects in removal, it does not bar a defendant from

seeking a successive removal of a case based on an intervening change in the legal or factual basis for removal. *See Dudley*, 2007 WL 329129, at **3-4. Similarly, the law of the case doctrine, although generally a bar to reconsideration of issues decided at an earlier stage of a case, does not preclude reconsideration of such issues on the basis of intervening changes in the law. *See id.* at *4. Because the successive removal of the cases before the Court is premised on intervening changes in applicable law following the original remand of the *Potter* case in 2004, the Court finds that neither Section 1447(d) nor the law of the case doctrine precludes Defendants from undertaking a successive removal, although, for the reasons discussed infra, the Court concludes that the procedural requirements for removal are not met in this instance.[5] The Court likewise concurs with *Dudley* that the Supreme Court's decision in *Dabit* is not an "order or other paper" for purposes of 28 U.S.C. § 1446(b), consistent with the general rule that documents generated in cases separate from a case sought to be removed are neither orders nor other paper within the meaning of Section 1446(b). *See Dudley*, 2007 WL 329129, at *7 (collecting cases). Although, as *Dudley* noted, a few courts have recognized an exception to this rule for cases in which an order or other paper was generated in a case to which a defendant seeking removal of a separate case also was a party, here, as in *Dudley*, no Defendants in the consolidated cases before the Court were parties to *Dabit*. *See Dudley*, 2007 WL 329129, at *8.

---

5.    The Court also rejects Plaintiffs' argument that the removal in this instance is procedurally defective because fewer than all Defendants joined in removal. As a rule, of course, all defendants in a case who are properly joined and served when the case is removed must affirmatively consent to removal. *See, e.g., Northern Ill. Gas Co. v. Airco Indus. Gases, Div. of Airco, Inc.*, 676 F.2d 270, 272 (7th Cir. 1982); *Yount*, 2006 WL 4017975, at **4-5; *Georgia-Pacific Corp. v. Sentry Select Ins. Co.*, No. 05-CV-826-DRH, 2006 WL 1525678, at *2 (S.D. Ill. May 26, 2006); *Schillinger v. 360Networks USA, Inc.*, Civil No. 06-138-GPM, 2006 WL 1388876, at *6 (S.D. Ill. May 18, 2006). In this instance the notice of removal is brought on behalf of all Defendants and signed by counsel for all Defendants, thus manifesting the requisite consent to removal.

Thus, the Court turns to the question of whether *Kircher IV*, the Court's order executing the mandate in *Kircher IV* by remanding the *Potter* case to state court, or the order of the state court administratively re-opening the file in the *Potter* case on November 9, 2006, permit successive removal of the claims before the Court.   In *Dudley*, as here, the defendants in a putative class action against a mutual fund based on alleged devaluation of fund shares due to market-timing arbitrage argued that *Kircher IV* and a district-court order executing the mandate in *Kircher IV* were "orders" authorizing removal within the meaning of 28 U.S.C. § 1446(b).   *See Dudley*, 2007 WL 329129, at \*5-6.[6]  The plaintiffs in *Dudley* argued that, while both documents were orders within the meaning of the statute, they nonetheless were not orders from which it could be "ascertained that the case is one which is or has become removable" within the meaning of Section 1446(b), because neither order affected the existence of federal subject matter jurisdiction as to the claims in the *Dudley* case.   *See id*. at \*\*5-6.   Instead, *Kircher IV* merely executed the mandate of the Supreme Court in *Kircher III*, while the district court's order merely executed the mandate of the Seventh Circuit Court of Appeals in *Kircher IV*, thus effecting a remand of the claims in *Dudley* to state court.   *See id*.

To determine whether the procedural requirements for removal were satisfied, *Dudley* examined the meaning of the term "order" as used in 28 U.S.C. § 1446(b).   Employing traditional canons of statutory construction, *Dudley* concluded, with the aid of a legal dictionary, that the

---

6.    The *Dudley* decision noted that, because *Kircher IV* and the order executing the mandate in *Kircher IV* were generated in the case sought to be removed, they necessarily were "orders" and not "other paper" for purposes of 28 U.S.C. § 1446(b).   The decision reasoned that, because the statute refers to both "order[s]" and "other paper," and because it is presumed that different words in a statute mean different things, a document that is an order in a case sought to be removed ipso facto cannot be other paper under the statute.   *See Dudley*, 2007 WL 329129, at \*5 & n.4.   The Court concurs in this reasoning.

"ordinary and plain meaning" of the term "order" as used in Section 1446(b) is "[a] command, direction, or instruction" by a court. *Dudley*, 2007 WL 329129, at *5. *See also Doe v. American Red Cross*, 14 F.3d 196, 201-02 (3d Cir. 1993) (quoting *Black's Law Dictionary* (5th ed. 1979)) (arriving at a similar construction of the meaning of the term "order" as employed in the statute: "a . . . mandate; precept; command or direction authoritatively given; rule or regulation."). Under this definition of the statutory language, *Dudley* concluded that neither *Kircher IV* nor the subsequent district-court order executing the mandate in *Kircher IV* and remanding to state court the claims sought to be removed was an order from which the existence of federal subject matter jurisdiction could be ascertained so as to authorize removal under Section 1446(b):

> In *Kircher IV* the Seventh Circuit Court of Appeals noted that . . . the Supreme Court's decision in *Dabit* had rejected this Court's original basis for remanding this case in 2004 . . . . However, the *Kircher IV* court made no determination about whether federal subject matter jurisdiction is proper in this case under SLUSA and in fact it expressly "reserved" that issue for a later time . . . . Most importantly, the *Kircher IV* court stated explicitly that the issue to be resolved on any future removal of the case under SLUSA would be whether *Dabit* – not *Kircher IV* or a remand order entered pursuant to the mandate in *Kircher IV* – "supplies an intervening change of law" so as to "justify a successive removal" . . . . Thus, nothing in *Kircher IV* constitutes a command or direction concerning the existence of federal subject matter jurisdiction in this case.
>
> Similarly, the Court's order remanding this case to state court pursuant to the mandate in *Kircher IV* cannot be regarded as a command with respect to the existence of subject matter jurisdiction in the case. Rather, the Court merely executed a mandate of the Seventh Circuit Court of Appeals, as the Court was required to do and in fact had no jurisdiction to do otherwise . . . . Thus, this Court's order executing the mandate in *Kircher IV* made no determination about the existence of subject matter jurisdiction in this case and cannot be deemed an "order" authorizing removal within the meaning of 28 U.S.C. § 1446(b).

*Dudley*, 2007 WL 329129, at **5-6 (quoting *Kircher IV*, 468 F.3d at 444).

The basic point of *Dudley* is simple and, in the Court's view, correct, namely, that

an "order" for purposes of 28 U.S.C. § 1446(b) must contain "a command or direction concerning the existence of federal subject matter jurisdiction." *Dudley*, 2007 WL 329129, at *5. In other words, to make a case removable an order must actually have some effect on the existence of federal subject matter jurisdiction in the case by, for example, allowing an amendment of a complaint to dismiss a party that defeats jurisdiction, to seek damages in excess of a jurisdictional minimum amount, or to join federal claims. *See id.* at *6 (collecting cases). Such a rule is consistent both with the general principle that, because removal is purely statutory, it is narrowly construed, *see Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941), and "[t]his Court['s] . . . desire to limit federal jurisdiction." *Vogel v. Merck & Co.*, Civil No. 07-21-GPM, 2007 WL 709002, at *9 (S.D. Ill. Mar. 6, 2007) (citing *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992)). The rule also has the advantage of being simple and easy to apply and, as the Court has recognized, in accord with controlling authority in this Circuit, "[t]he first virtue of any jurisdictional rule is clarity and ease of implementation." *Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at *4 (S.D. Ill. Apr. 25, 2006) (quoting *Knudsen v. Liberty Mut. Ins. Co.*, 411 F.3d 805, 806 (7th Cir. 2005)). *See also In re Kilgus*, 811 F.2d 1112, 1117 (7th Cir. 1987) ("The more mechanical the application of a jurisdictional rule, the better. The chief and often the only virtue of a jurisdictional rule is clarity.") (citations omitted); *Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at *7 (S.D. Ill. Apr. 21, 2006) ("The Seventh Circuit Court of Appeals has emphasized frequently that jurisdictional rules must be clear and easy to apply, so that they yield uniform results.") (collecting cases). Moreover, the Court notes, allowing cases to be removed on the basis of something other than an authoritative judicial command with respect to jurisdiction is an invitation to defendants to whipsaw cases constantly between state and federal court through

successive removals.  Obviously, all of these considerations apply with especial cogency in this instance.  These consolidated cases, as discussed, already have spent a great deal of time in federal court in protracted litigation over threshold matters.  It is apparent from Defendants' submissions to the Court that they believe they possess what amounts to an entitlement to a federal forum, regardless of whether the requirements for the exercise of federal jurisdiction on removal are satisfied or not.  However, the Court does not agree.  In the absence of an order authorizing removal, Defendants must pursue their claim of SLUSA preclusion in a forum equally competent with this Court to decide it, specifically, the circuit court of Madison County, Illinois.

As *Dudley* recognized, a very important aspect of *Kircher III* was its holding that, contrary to the view of the Seventh Circuit Court of Appeals in *Kircher I*, a determination about preclusion of state-law claims under SLUSA is not a matter of exclusive federal jurisdiction and instead may be decided in either federal or state court.  *See Dudley*, 2007 WL 329129, at **8-9.  The *Kircher III* decision acknowledged that, under SLUSA, a defense of federal preemption of state law "coincide[s] entirely" with the basis for federal subject matter jurisdiction under the statute.  *Dudley*, 2007 WL 329129, at *8 (quoting *Kircher III*, 126 S. Ct. at 2157).  SLUSA legislatively repeals, of course, the familiar "well-pleaded complaint" rule, whereby a defense under federal law ordinarily is not a basis for federal subject matter jurisdiction.  *See id.* at *2 n.1.  *Cf. Kuntz*, 469 F. Supp. 2d at 594 (quoting *Rice v. Panchal*, 65 F.3d 637, 639 (7th Cir. 1995)) (stating the general rule that "[f]ederal preemption that merely serves as a defense to a state law action (sometimes called 'conflict preemption') does not confer federal question jurisdiction.  Thus the defendant cannot cause a transfer to federal court simply by asserting a federal question in his responsive pleading."); *Fuller v. BNSF Ry. Co.*, No. CIV. 06-722-GPM, 2007 WL 403853, at *2 (S.D. Ill. Jan. 3, 2007)

(quoting *Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 10 (1983) ("[A] federal court does not have original jurisdiction over a case in which the complaint presents a state-law cause of action, but also asserts that federal law deprives the defendant of a defense he may raise, or that a federal defense the defendant may raise is not sufficient to defeat the claim."). The *Dudley* decision reasoned that, in view of the structure of SLUSA, the trigger for a successive removal under the statute necessarily must be something in the nature of a determination that state-law claims are precluded by SLUSA. *See Dudley*, 2007 WL 329129, at \*\*8-9. Thus, if a defendant is unsuccessful on an initial removal of a case under SLUSA, then, as *Kircher III* "tacitly" acknowledged, most likely it will be up to a state court to make the determination about preclusion under the statute. *Id.* at \*8. The statute effectively gives a defendant only a single "shot" at having the issue of SLUSA preclusion decided in federal court. *See id.*[7]

　　　　　The Court agrees with *Dudley* that *Kircher III* strongly suggests that the preclusion determination in this instance must be made in state court. As in *Dudley*, the Court does not foreclose the possibility that a defendant may successfully effect a second removal under SLUSA short of a determination about preclusion under the statute in state court. *See Dudley*, 2007 WL 329129, at \*9 ("[T]he Court does not hold that a case can never be removed for a second time under SLUSA absent a determination by a state court about preemption under the statute. Instead,

---

7.　As a practical matter, of course, the broad bore of SLUSA preclusion revealed by *Kircher II* and *Dabit*, discussed at length in the preceding section of this Order, means that it is exceedingly difficult for plaintiffs to plead around the strictures of the statute in order to evade federal court. Thus, it seems unlikely that, apart from very unusual circumstances like the ones presented by these consolidated cases and by *Dudley*, a defendant seeking to remove under SLUSA would need more than a single shot.

the Court merely holds that, in light of the particular facts and legal issues presented by this case, the judicial decisions relied upon by Defendants as the basis for a second removal of the case do not constitute orders or other paper authorizing such a removal.").  Nonetheless, given the structure of the statute, it is very difficult to imagine what event other than a determination that class-action claims under state law in connection with purchases or sales of covered securities are precluded by SLUSA could authorize such a removal.[8]  The Court is satisfied that none of the orders relied upon by Defendants as a basis for successive removal of Plaintiffs' claims discloses the existence of federal subject matter jurisdiction so as to permit successive removal under 28 U.S.C. § 1446(b). In the preceding section of this Order, of course, the Court determined that the claims in this case are precluded by SLUSA.  However, as *Dudley* observed, federal subject matter jurisdiction is not identical to federal removal jurisdiction:  in addition to establishing subject matter jurisdiction, Defendants must also be able to point to some event that has triggered a right to remove these claims a second and third time.  *See Dudley*, 2007 WL 329129, at *8 (quoting *Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1544 (5th Cir. 1991)) ("[T]his court has . . . little difficulty in distinguishing between removal jurisdiction, on the one hand, and original or subject matter jurisdiction, on the other hand.").

        Because Defendants have failed to show the Court an order authorizing successive removal in this instance, these consolidated matters must return to state court for ultimate resolution

---

8.    In this connection it is worth noting that "SLUSA does not actually pre-empt any state cause of action.  It simply denies plaintiffs the right to use the class action device to vindicate certain claims.   The Act does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist."  *Dabit*, 126 S. Ct. at 1514.  In other words, a state court's determination that SLUSA precludes the maintenance of a class action as to state-law claims in connection with the purchase or sale of covered securities nevertheless leaves a substantial case to be removed to federal court.

of the issue of SLUSA preclusion.  The Court's determination that Plaintiffs' claims are precluded by SLUSA, though not reviewable and thus not absolutely binding on the state court, *see Standefer v. United States*, 447 U.S. 10, 23 (1980); *Hussein v. Oshkosh Motor Truck Co.*, 816 F.2d 348, 356 (7th Cir. 1987); *Restatement (Second) of Judgments* § 28(1) (1982), nonetheless establishes the law of the case, from which the state court should not depart without compelling reasons to do so.  The decisions of a federal court with jurisdiction of the parties and subject matter establishes the law of the case as to proceedings in the same case in state court.  *See Barrett v. Baylor*, 457 F.2d 119, 123-24 (7th Cir. 1972); *United States v. Woods*, 432 F.2d 1072, 1075-76 (7th Cir. 1970); *People v. Bean*, 560 N.E.2d 258, 292-93 (Ill. 1990); *People v. Fields*, 552 N.E.2d 791, 818 (Ill. 1990).  *Accord Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 624 n.10 (8th Cir. 1997); *McIntosh v. Atchison, Topeka & Santa Fe Ry. Co.*, 877 P.2d 11, 15-16 (Kan. Ct. App. 1994).  *See also* 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478.4 (3d ed. 1998 & Supp. 2007) ("A ruling made by the federal court before remand may be called into question in the state court.  If the federal court asserted subject-matter jurisdiction to make the pre-remand ruling, a state court is likely to attribute at least full law-of-the-case effect to the ruling.") (collecting cases).

The law of the case doctrine is a rule of prudence, rather than an inexorable command.  *See Bagola v. Kindt*, 131 F.3d 632, 637 (7th Cir. 1997) ("To modify the law of the case is primarily a matter of . . . good sense."); *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982) ("The law of the case doctrine . . . is a rule of practice, based on sound policy that, when an issue is once litigated and decided, that should be the end of the matter . . . .  The doctrine is a self-imposed prudential limitation rather than a recognition of a limitation of the courts' power.");

*Aper v. National Union Elec. Corp.*, 533 N.E.2d 398, 401 (Ill. App. Ct. 1988) (noting that the doctrine of the law of the case "is not an inexorable one and should not be adhered to in a case in which the court has committed an error which results in injustice, and at the same time lays down a principle of law for future guidance which is unsound and contrary to the interest of society."). Nevertheless, the doctrine contemplates that what is done at one stage of a case will not be set aside lightly at a later stage of the case. *See Evans v. City of Chicago*, 873 F.2d 1007, 1014 (7th Cir. 1989) (a court is not bound by an earlier decision in a case when "exceptional circumstances" are present, as when "the evidence in a subsequent trial was substantially different[,] controlling authority has since made a contrary decision of law applicable to such issues[,] or the decision was clearly erroneous, and would work a substantial injustice."); *Parts & Elec. Motors, Inc. v. Sterling Elec.*, 866 F.2d 228, 231 (7th Cir. 1988) (the law of the case doctrine "should be applied unless unusual circumstances or a compelling reason render it inapplicable."); *Shakman v. Dunne*, 829 F.2d 1387, 1393 (7th Cir. 1987) ("The law of the case doctrine is not to be lightly disregarded. It is . . . based on the salutary and sound public policy that litigation should come to an end."); *Bond Drug Co. of Ill. v. Amoco Oil Co.*, 751 N.E.2d 586, 593 (Ill. App. Ct. 2001) (quoting *Harris Trust & Sav. Bank v. Otis Elevator Co.*, 696 N.E.2d 697, 701 (Ill. App. Ct. 1998)) (the law of the case should be followed unless an earlier decision in a case is "clearly erroneous" and adherence to it "would work a manifest injustice"). With this caveat, the Court concludes that the final determination about SLUSA preclusion in this instance must be made by the state court. Though the Court holds that Plaintiffs' claims are within federal subject matter jurisdiction, Plaintiffs have raised a timely objection to procedural defects in the removal of their claims. Thus, the Court is constrained to remand Plaintiffs' claims to state court.

**Conclusion**

Plaintiffs' motion for remand to state court based on lack of subject matter jurisdiction (Doc. 19) is **DENIED**. Plaintiffs' motions for remand to state court based on procedural defects in removal (Docs. 9, 13) are **GRANTED**. Pursuant to 28 U.S.C. § 1447(c), these consolidated cases are **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, by reason of a procedural defect in removal. Defendants' motion to dismiss (Doc. 7) and motion for a hearing on the pending motions in the consolidated cases (Doc. 25) are **DENIED as moot**.[9]

**IT IS SO ORDERED.**

Signed this 5th day of April, 2007.

/s/         David  RHerndon
**United States District Judge**

---

9.    The Court notes that, although the instant matter appears on the Court's docket as two consolidated cases, as discussed in the introductory portion of this Order the claims before the Court actually involve only a single case, *Potter v. Janus Investment Fund*, which is docketed in the Madison County circuit court as Case No. 03-L-1254. Thus, upon remand, it is unnecessary for the clerk of the state court to docket the consolidated matters remanded herein as separate cases; rather, further proceedings in state court should be in Case No. 03-L-1254.